Alexander L. Conti, California Bar No. 155945
M. Blake Mancillas, California Bar No. 259294
aconti@conti-law.com
bmancillas@conti-law.com
**CONTI LAW**
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone:   (949) 791-8555
Facsimile:    (949) 791-8556

Attorney for Plaintiff
CHARTWELL STAFFING SERVICES INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CHARTWELL STAFFING SERVICES INC.<br><br>          Plaintiff,<br><br>     v.<br><br>AMERICAN INTERNATIONAL INDUSTRIES, GLAMOUR INDUSTRIES, CO., SRYZ CORP., ERX CORP., ARYZ CORP, RAZY PROPERTIES, INC., and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. 2:21-cv-3250 JVS (SKx)<br><br>**PLAINTIFF/COUNTER-DEFENDANT CHARTWELL STAFFING SERVICES INC.'S OPPOSITION TO DEFENDANT/CROSS-COMPLAINANT AMERICAN INTERNATIONAL INDUSTRIES MOTION TO DISQUALIFY ALEXANDER CONTI, ESQ. AND CONTI LAW FIRM AS COUNSEL FOR PLAINTIFF/CROSS-DEFENDANT CHARTWELL STAFFING SERVICES INC.**<br><br>*[Declarations of Alexander L. Conti and W. Holmes Lilley filed concurrently herewith]*<br><br>Date:  August 16, 2021<br>Time:  1:30 pm<br>Courtroom: 10C<br>Judge: Honorable James V. Selna<br><br>Action Filed:    April 15, 2021 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION……………………………………………..4
II.   RELEVANT BACKGROUND………………………………..5
      A. Ramirez sues AII and Chartwell for penalties under
         PAGA ………………………………………………………5
      B. AII expressly agreed to allow Mr. Conti to represent
         Chartwell in the *Ramirez* Action and further agreed to
         waive any disqualification challenge as to Mr. Conti's
         future representation of Chartwell…………………………5
      C. Chartwell and AII execute the May 19, 2020 staffing
         services agreement…………………………………………..6
      D. Mr. Conti did not acquire any confidential information
         relating to this collection action through his representation
         of AII in the Ramirez Action………………………………..7
      E. Mr. Conti withdraws as AII's counsel in the Ramirez Action
         and Novian and Novian substitute in as new counsel……….7
      F. Chartwell sues AII here to collect $1.4 million in unpaid
         invoices for temporary staffing services it provided to AII…8
      G. AII engages extensively with Mr. Conti before raising
         the issue of disqualification with this Court …………………9
III.  LEGAL STANDARD…………………………………………..10
IV.   ARGUMENT……………………………………………………12
      A. The motion to disqualify should be denied because
         it is not timely……………………………………………..12
      B. The motion to disqualify should be denied because
         AII waived that challenge when it signed the
         Joint Client Consent……………………………………….13
      C. The motion to disqualify should be denied because
         the cases at issue are not the "same" or
         "substantially related"……………………………………..17
      D. The motion to disqualify should be denied because
         Mr. Conti and Conti Law never obtained confidential
         information from AII in connection with this case…………..19
      E. AII's claim that Mr. Conti is disqualified under the
         advocate-witness rule has no merit…………………………..21
V.    CONCLUSION…………………………………………………23

1

1
2

## **TABLE OF AUTHORITIES**

*Akazawa v. Link New Technology International,* 2004 WL 7338362
(C.D. Cal., Nov. 9, 2004)(Selna, J.)……………………………………..18, 19
*Alexander v. Primerica Holdings, Inc.,* 822 F.Supp. 1099 (D.N.J.1993)..….11
*Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 814………………………11
*DCR Marketing Inc v. US Alliance Group, Inc.*, 2020 WL 2066148
(C.D. Cal., Jan. 31, 2020) (Selna, J.)……………………………………18, 20
*Flatt v. Superior Court*, 9 Cal. 4th 275 (1994)………………………………20
*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291……………………17
*Gutierrez v. New Century Mortgage Co.*, 2013 WL 12130319
(C.D. Cal., Mar. 25, 2013) (Selna, J.)……………………………………11, 22
*Housing is a Human Right v. County of Orange*, 2019 WL 3002852,
(C.D. Cal., June 13, 2019) (Selna, J.)……………………………………10, 17 18
*In re City. of L.A.*, 223 F.3d 990 (9th Cir. 2000)……………………………..10
*Lehman Brothers Holdings Inc. v. Direct Mortgage Corp.*
(C.D. Cal., Feb. 4, 2013,) 2013 WL 12114447………………………………..19
*Long Nguyen v. Lotus by Johnny Dung Inc.* 2019 WL 7205890
(C.D. Cal., Apr. 26, 2019) (Selna, J.)………………………………………11
*Maxwell v. Superior* Court, 30 Cal.3d 606 (1982)……………………………15
*Natural-Immunogenics Corp. v. Newport Trial Group*, 2017 WL 10563004
(C.D. Cal., June 30, 2017) (Selna, J.)……………………………………..12, 13
*Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045 (9th Cir.
1985)……………………………………………………………………..12
*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
20 Cal. 4th 1135 (1999)……………………………………………………11
*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
402 F.Supp.3d 615 (N.D. Cal. 2019)…………………………………………..23

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*River West Inc. v. Nickel*, 188 Cal.App.3d 1297 (1987)…………………………13

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)……………...10, 11

*Studio Transportation Drivers v. Happy Hour Productions, LLC*, 2009 WL 10675267 (C.D. Cal., Nov. 12, 2009) (Selna, J.)………………………………11

*Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980)…………………………………11

*Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85 (9th Cir. 1983)...12

*United States v. Edwards*, 154 F.3d 915 (9th Cir. 1998)………………….…..23

*U.S. v. Ketner*, 2006 WL 8443071 (C.D. Cal., Jan. 25, 2006)(Selna, J.)………20

*U.S. v. Sayakhom*, 186 F.3d 928 (9th Cir. 1999), *amended*, 197 F.3d 959 (9th Cir. 1999)………………………………………………………………23

*Visa U.S.A., Inc. v. First Data Corp.* (N.D. Cal. 2003) 241 F.Supp.2d 1100..15,16

*Wild Game NG, LLC v. Wong's Int'l (USA) Corp.*, 2006 WL 3434379 (D. Nev. Nov. 29, 2006)……………………………………………….…..12

*Zador Corp. v. Kwan* (1995) 31 Cal.App.4th 1285…………………13, 14, 15, 16

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This Court should see this disqualification motion for what it is: a tactical weapon that attempts to deprive Chartwell of its counsel of choice. The motion should be denied for the following reasons.

*First*, the motion comes too late. Since this case's inception, AII has engaged extensively with Mr. Conti and fought Chartwell at every conceivable turn. Until a few weeks ago, not once did AII raise the issue of disqualification with Mr. Conti or this Court. AII's failure to do so - despite possessing all of its arguments to disqualify Mr. Conti throughout that time period – dooms AII's motion.

*Second*, AII made the informed decision to expressly waive its ability to prohibit Mr. Conti from serving as Chartwell's counsel in a future case (like this one) "under all circumstances." As a result, AII waived its right to disqualify Mr. Conti.

*Third*, Mr. Conti's successive representation of Chartwell in this case, which is a collection action based on AII's breach of the 2020 Service Agreement between AII and Chartwell, is not remotely related to his representation of AII in the *Ramirez* case, which is an action under the Private Attorneys General Act ("PAGA") where the plaintiff, as the proxy for the State of California, seeks penalties for alleged Labor Code violations. That fact is especially evident now because this Court dismissed all of AII's indemnity and contribution claims alleged in its First Amended Counterclaim. That ruling is fatal to AII's motion for disqualification because it is premised on the now-dismissed indemnity and contribution claims.[1]

---

[1] Chartwell asked AII to withdraw its motion to disqualify because it was based on AII's indemnity claims, which were dismissed. AII refused. (Conti Decl. at ¶ 34, Ex. 22.)

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

*Fourth*, even if AII could show that the *Ramirez* Action and this case were the "same or substantially related", Mr. Conti does not possess any confidential information from AII related to the issue in this case, i.e., whether AII breached the 2020 Service Agreement by not paying Chartwell's invoices and owes Chartwell $1.4 million.

*Fifth*, AII's argument that the advocate-witness rule requires Mr. Conti's disqualification is frivolous because he has no personal knowledge regarding the facts underlying Chartwell's collection action. Moreover, this case will involve a bench trial, not a jury trial, and Chartwell agrees to allow Mr. Conti to serve as both advocate and witness.

For these reasons, as explained more fully below, AII's motion to disqualify should be denied.

## II.    RELEVANT BACKGROUND

### A.    Ramirez sues AII and Chartwell for penalties under PAGA.

In 2017, Chartwell began to provide temporary employees to AII for its cosmetic business pursuant to a written staffing services agreement ("the 2017 Service Agreement"). [*See* Doc. 33, Ex. B.]  Ms. Ramirez was one of the Chartwell temporary employees assigned to work for AII. Ms. Ramirez subsequently sued both AII and Chartwell in the Los Angeles County Superior Court under PAGA alleging that they violated various sections of the California Labor Code triggering liability for penalties ("the *Ramirez* Action"). (*See generally* Conti Decl. at ¶ 2; Ex. 1). Chartwell has denied Ms. Ramirez's claims and is currently defending itself in that matter.

### B.    AII expressly agreed to allow Mr. Conti to represent both it and Chartwell in the *Ramirez* Action and further agreed to waive any disqualification challenge as to Mr. Conti's future representation of Chartwell .

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

At the inception of the *Ramirez* Action, Chartwell's and AII's interests were then aligned and AII and Chartwell executed an April 28, 2020, Joint Client Consent Form and Disclosure ("the Joint Client Consent") agreeing to joint representation by Mr. Conti in that case. (Conti Decl. at ¶ 4, Ex. 2 [the Joint Client Consent].) The Joint Client Consent contains two provisions which are important in this context. First, AII agreed that, in connection with the *Ramirez* Action:

> in the event that [AII] discharges [Conti Law] or that [Conti Law] is disqualified from representing American International Industries, American International Industries waives any conflict claim and shall not seek to disqualify Attorney from the continued representation of Chartwell Staffing Services Inc.

In addition to the waiver agreement with respect the *Ramirez* Action, AII agreed to a further waiver:

> [I]t waives any claim it may assert for the disqualification of [Conti Law] and agrees to [Conti Law's] continued representation of Chartwell Staffing Services Inc. *under all circumstances*.

(Conti Decl. at ¶ 4; Ex. 2, emphasis added.].) The phrase "under all circumstances" appears immediately above AII's signature.  It means exactly what it says and bars any idea that AII could disqualify Mr. Conti in a future Chartwell case.

**C.      Chartwell and AII execute the May 19, 2020 staffing services agreement.**

On May 19, 2020 – after the execution of the Joint Client Consent on April 28, 2020 – Chartwell and AII entered in a new written staffing services agreement ("the 2020 Services Agreement").  Mr. Conti was not involved in the negotiation, drafting or execution of the 2020 Services Agreement and did not become aware of

6

its existence until October 2020.  (Conti Decl. at ¶ 10, Ex. 7.)  Other than to explain that the 2020 Services Agreement created a potential conflict of interest, Mr. Conti did not discuss that agreement with anyone from AII. (Conti Decl. at ¶ 10, Ex. 7.)

**D.     Mr. Conti did not acquire any confidential information relating to this collection action through his representation of AII in the *Ramirez* Action.**

During his representation of AII in the *Ramirez* Action, Mr. Conti did not obtain any confidential information about the factual and legal issues at stake here – namely, the negotiation and execution of the 2020 Services Agreement upon which Chartwell basis its claims, the performance of the agreement, and AII's decision to not to pay Chartwell $1.4 million for the temporary staffing services it provided. (Conti Decl. at ¶¶ 10 -11.)

Moreover, as counsel for AII in *Ramirez* Action, Mr. Conti never acquired any confidential information about AII's business practices or operations nor does he have any percipient knowledge about any of the PAGA claims implicated by the *Ramirez* Action either. (*See* Conti Decl. at ¶¶ 5-9.)(explaining these facts in detail). In fact, in the *Ramirez* Action, AII refused to substantively respond to plaintiff's written discovery and, instead, served objections only and produced no documents.[2] (Conti Decl. at ¶ 6; Exs. 3-6.) Even if Mr. Conti did obtain confidential information in connection with the *Ramirez* Action, e.g., labor policies and procedures, such information is entirely unrelated to the collection action Chartwell filed against AII in this Court.

**E.     Mr. Conti withdraws as AII's counsel in the *Ramirez* Action and Novian and Novian substitute in as new counsel.**

---

[2] AII puts that information "in issue" through its claim that Mr. Conti gained "confidential information" about AII's business practices and operations during the *Ramirez* representation. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.").

1    In late October 2020, Mr. Conti became aware of the 2020 Service
2  Agreement, which was executed on May 19, 2020 after April 28, 2020 Joint Client
3  Consent. (*Compare* Conti Decl. Ex. 2 and 7.) Because of indemnity language in the
4  2020 Service Agreement, a potential conflict of interest arose between AII and
5  Chartwell.[3] (Conti Decl. at ¶ 11, Ex. 8.) Mr. Conti withdrew as AII's counsel and
6  Novian & Novian LLP substituted in. (Conti Decl. at ¶ 12, Ex. 9.) Importantly, the
7  Joint Client Consent was prepared before the 2020 Service Agreement was executed
8  and, moreover, that agreement was created without Mr. Conti's knowledge.
9  Therefore, it was impossible for Mr. Conti to have referenced the 2020 Service
10  Agreement in the antecedent Joint Client Consent.

11    **F.    Chartwell sues AII here to collect $1.4 million in unpaid invoices**
12          **for temporary staffing services it provided to AII.**

13    As explained just above, Chartwell agreed to supply temporary employees to
14  AII and AII agreed to pay for this service. When AII stopped paying Chartwell's
15  invoices totaling $1.4 million, Chartwell sued AII in this Court for breaching the
16  May 2020 Services Agreement. (*See generally* Doc. No. 1)(alleging count for
17  breach of written contract and a common count for services rendered). AII
18  counterclaimed against Chartwell, (*See* Doc. Nos. 12; 33), but this Court recently
19  dismissed all of AII's claims. (*See* Doc. 44)(dismissing all of AII's counts for
20  indemnity, contribution and declaratory relief.) The current posture of the case is
21  AII defending Chartwell's collection action. Because AII's dismissed counterclaims
22  formed the basis for its disqualification motion, that reasoning has no force because
23  those counterclaims have no legal effect. *Hampton v. Pacific Investment*
24  *Management Company LLC*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals under
25  Rule 12(b)(6) [] are judgments on the merits. Such dismissals, unless the court

26  _____

27  [3] The 2017 Staffing Services Agreement between Chartwell and AII expired in 2018
   by its own terms, approximately one year prior to the filing of the *Ramirez* Action in
28  March 2020.

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

provides otherwise, will preclude future assertion of claims "aris[ing] out of the same transactional nucleus of facts.") (cleaned up); *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012)(dismissal is a "final judgment" on the "claims" asserted in that complaint).

**G.    AII engages extensively with Mr. Conti before raising the issue of disqualification with this Court.**

Although a relatively recent filing, this case has been actively litigated by AII.

- AII engaged in back-and-forth discussions with Mr. Conti about their demand for indemnity to Chartwell; (Conti Decl. at ¶ 12-14; Exs. 10 - 12)

- AII engaged in settlement negotiations[4] with Chartwell through Mr. Conti; (Conti Decl. at ¶ 18-20; Exs. 13 -15)

- AII opposed Chartwell's application for right to attach order (*see* Conti Decl. at ¶ 22; 24) – which was prepared and filed by Conti Law (*see* Doc. No. 9); Conti Decl. at ¶¶ 17; 24)

- AII answered Chartwell's complaint (*see* Doc. No. 12);

- AII filed a Counterclaim against Chartwell (*Id.*)

- AII filed a First Amended Counterclaim against Chartwell (*see* Doc. No. 33)

- AII engaged in meet and confer discussions with Mr. Conti about Chartwell's motion to dismiss AII's counterclaims; (Conti Decl. at ¶ 27)

---

[4] Chartwell offers evidence of the fact of settlement discussions to show a course of conduct that cumulatively reflects AII and its lawyers extensively engaging with Mr. Conti. *See Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc.*, No. C-05-3148MMC(JCS), 2007 WL 963975, at *3 (N.D. Cal., Mar. 30, 2007)(FRE 408 prohibits using settlement information as proof of liability).

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

- AII opposed the motion to dismiss (*see* Doc. No. 35) (which was drafted and prepared by Conti Law) and lost)(*see* Doc. No 44);
- AII collaborated with Mr. Conti in connection with preparing a Rule 26 joint report for this Court (Conti Decl. at ¶ 33); *see generally* Doc. No. 38);
- AII sought Chartwell's agreement to stipulate to a jury trial in this case; Chartwell declined (Conti Decl. at ¶ 29; Ex. 18); and
- AII engaged in extensive back-and-forth discussions with Chartwell's lawyer about AII filing a Proposed Second Amended Counterclaim, including providing draft pleadings; (Conti Decl. at ¶ 30-32; Exs. 19 - 21).

For months, and during nearly all of this litigation activity, AII did not raise the disqualification issue to Mr. Conti (or this Court) despite the fact that the purported basis for their disqualification existed while the events described above transpired. (Conti Decl. at ¶ 28). AII's delay underscores the tactical nature of its motion: to prejudice Chartwell by denying Chartwell its choice of counsel.

## III.   LEGAL STANDARD

"In the Ninth Circuit, state law governs motions to disqualify. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ('By virtue of the district court's local rules, California law controls whether an ethical violation occurred.'); *see also In re City. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000) ('Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue.'). The Central District applies the California State Bar Act, the California Rules of Professional Conduct, and related judicial decisions in assessing the standards of professional conduct. *See* C.D. Cal. L.R. 83-3.1.2." E.g., *Housing is a Human Right v. County of Orange*, No. SACV19388DOCJ(DEX), 2019 WL 3002852, at *3-4 (C.D. Cal., June 13, 2019) (Selna, J.).

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

"The decision to disqualify counsel is within the trial court's discretion and limited by applicable legal principles" *Id.* (citing *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980); *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1143–44 (1999)."Because disqualification is a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary." *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 814 (N.D. Cal. 2004) (citing *Alexander v. Primerica Holdings, Inc.,* 822 F.Supp. 1099, 1114 (D.N.J.1993)).

This Court has pointed out in prior rulings that because disqualification motions are routinely deployed as "tactical weapons"  they are "subject to strict judicial scrutiny." *See, e.g.*, *Studio Transportation Drivers v. Happy Hour Productions, LLC*, No. SACV0801117JVS(ANX), 2009 WL 10675267, at *1 (C.D. Cal., Nov. 12, 2009) (Selna, J.) (acknowledging the unfortunate reality that the "potential for less-than-scrupulous lawyers to use motions to disqualify as tactical weapons [] requires courts to subject these motions to careful examination), *aff'd sub nom. Studio Transp. Drivers v. Happy Hours Productions, LLC* 418 Fed.Appx. 640 (9th Cir. 2011).

Separate and apart from analyzing the factors that favor disqualification, this Court must "examine the implications of disqualification, including 'a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *Long Nguyen v. Lotus by Johnny Dung Inc.* No. 817CV01317JVS(JDE), 2019 WL 7205890, at *2 (C.D. Cal., Apr. 26, 2019) (Selna, J.)

When both sides present compelling arguments for and against disqualification (which AII has not done here), this Court has pointed out that, in the end, judges "should resolve [a] close case in favor of the client's right (to [be] represent[ed] by an attorney of his or her choice". *Gutierrez v. New Century Mortgage Co.*, No. SACV122119JVS(RNB), 2013 WL 12130319, at *3 (C.D. Cal.,

1  Mar. 25, 2013) (Selna, J.)(citing *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.,*
2  *Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985).

3  **IV.   ARGUMENT**

4  **A.   The motion to disqualify should be denied because it is not timely.**

5      AII's motion comes too late. Indeed, as this Court has expressly
6  acknowledged, the "failure to move to disqualify [counsel] within a reasonable time
7  may waive the motion entirely." *Natural-Immunogenics Corp. v. Newport Trial*
8  *Group*, No. SACV1502034JVS(JCG), 2017 WL 10563004, at *4 (C.D. Cal., June
9  30, 2017) (Selna, J.) (citing *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701
10  F.2d 85, 88 (9th Cir. 1983) and *Wild Game NG, LLC v. Wong's Int'l (USA) Corp.*,
11  No. 3:05-CV-635-LRH(RAM), 2006 WL 3434379, at *4 (D. Nev. Nov. 29,
12  2006))(denying motion to disqualify counsel there because party waited far too long
13  to bring that motion and because party that sought disqualification "had known of
14  Defendant's choice of the Robison firm as its counsel" for an unreasonable amount
15  of time).

16      Here, just like the losing party's motion that sought to disqualify opposing
17  counsel in *Natural- Immunogenics*, AII's motion is doomed because AII "could
18  have brought [their disqualification] motion" well before it did. That is because
19  AII's papers, just like the losing party's in *Natural- Immunogenics*, "do not rely on
20  any recently discovered documents or testimony" to support their disqualification
21  argument. To the contrary, AII's papers make clear that its disqualification
22  arguments, i.e., "successive representation" and the "advocate-witness rule", are
23  based on facts or circumstances that existed when Chartwell filed suit.  AII could
24  have (and should have) brought this motion when Chartwell filed this case – which
25  was months ago. *See Wild Game*, 2006 WL 3434379, at *4 (deciding factor to
26  determine timeliness in this context is when the party seeking disqualification first
27  knew of opposing party's choice of counsel).

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

But AII did not. Rather, AII chose to engage with Chartwell and their chosen lawyer - Mr. Conti. Only after Chartwell filed its motion to dismiss AII's counterclaims, which was granted, did AII decide to raise the issue of disqualification. That timing implies that, after realizing the weakness of its indemnity claims, a "tactical decision" was made to gain an advantage through this motion. *Natural-Immunogenics Corp.*, 2017 WL 10563004, at *5 (citing *SpeeDee Oil*, 20 Cal. 4th at 1145). Given the extent of AII's engagement with Mr. Conti so far in this case, "the ramifications of [AII's] apparent tactical decision to delay this motion [here] only underscore the prejudicial result of denying [Chartwell] its chosen counsel" at this point in the proceedings. *Id.*[5]

## B.     The motion to disqualify should be denied because AII waived that challenge when it signed the joint representation letter.

The plain language of the joint representation letter AII signed bars the disqualification attempt it makes here. When signing the Joint Client Consent, AII agreed to the following provision:

> "[AII] waives any claim it may assert for the disqualification of [Conti Law] and agrees to [Conti Law's] continued representation of Chartwell Staffing Services Inc. ***under all circumstances***." (Emphasis added.)

That language means exactly what is says and waivers, like these, while extensive, are no less enforceable. *See Zador Corp. v. Kwan* (1995) 31 Cal.App.4th 1285, 1301 (observing that a "blanket waiver of the client's right to disqualify" are ethically proper and observing that the "State Bar of California has reached a similar conclusion").

---

[5] Given that reality, the burden shifts to AII to justify why it waited to bring its motion, which it cannot do under the circumstances. *See River West Inc. v. Nickel*, 188 Cal.App.3d 1297, 1309 (1987).

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

AII expressly agreed to not disqualify Mr. Conti and Conti Law in the future "under all circumstances." Again, this language is admittedly comprehensive but, once again, no less enforceable – especially under the circumstances here where the successive representation is completely unrelated and where there is strong evidence that the motion to disqualify counsel is being misused for "purely strategic purposes". *Zador Corp.*, 31 Cal.App.4th at 1300–1303 (reversing trial court order to disqualify counsel where, as here, blanket "waiver and consent form" agreeing not to disqualify counsel in the future was "detailed", (*see generally* Conti Decl. at Ex. 2), and where former client agreed not to disqualify his counsel under any circumstance "notwithstanding any adversity that [could] develop" to the client in the future).  AII's opening brief failed to even acknowledge the existence of this language or attempt to explain how it does not foreclose the disqualification motion it makes here. (*See generally* Doc. No. 43) (nowhere discussing the waiver language or analyzing how AII's disqualification motion succeeds in spite of its existence and force).

Instead, AII's motion seems to suggest that this language has no force because, at the time that AII and Chartwell signed the joint representation letter, Mr. Conti was required to disclose to AII any and every potential conflict of interest scenario that could possibly arise at any time in the future.  And, for that reason, AII's claims that its' express agreement to not disqualify Mr. Conti in the future was never valid to begin with. (*See* Doc. No. 43 at 10) (hinting that AII's agreement not to disqualify Mr. Conti has no effect because he failed to obtain AII's "informed written consent" to represent Chartwell in this case).

California courts have pointed out the absurdity of AII's argument here: "California law does not require that every possible consequence of a conflict be disclosed for a consent to be valid. Indeed, in *Maxwell* [,] the California Supreme Court recognized that 'Waiver of the consequences of potential conflict was not inadequate simply because neither the court nor the agreement undertook the

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

impossible burden of explaining separately every conceivable ramification." *Zador Corp.*, at 1301 (cleaned up)(citing *Maxwell v. Superior* Court, 30 Cal.3d 606 at 622 (1982); *accord Visa U.S.A., Inc. v. First Data Corp.* (N.D. Cal. 2003) 241 F.Supp.2d 1100, 1105 ("An advance waiver of potential future conflicts, such as the one executed by First Data and Heller, is permitted under California law, even if the waiver does not specifically state the exact nature of the future conflict.") (citing *Maxwell v. Superior Court,* 30 Cal.3d 606, 622, 180 Cal.Rptr. 177, 639 P.2d 248 (1982) (not requiring counsel to outline every conceivable possibility of potential conflict for a prospective waiver to be valid); Cal. State Bar Formal Ethics Op.1989–115 IIA–315, IIA–315 (1989) ("*Maxwell* stands for the general proposition that an advance waiver of both conflict of interest and confidentiality protections is not, *per se,* invalid"); *Zador,* 31 Cal.App.4th at 1301, 37 Cal.Rptr.2d 754 (in a situation involving a prospective waiver, "California law does not require that every possible consequence of a conflict be disclosed for a consent to be valid."))

Any assertion that AII's express agreement to not disqualify Mr. Conti in a future case was "invalid" because Mr. Conti never described the current conflict between AII and Chartwell is unpersuasive. Importantly, the May 2020 Service Agreement between AII and Chartwell did not exist when AII signed the April 28, 2020, Joint Client Consent.  For that simple, temporal reason it could not have been described Joint Client Consent. As a result, broad waiver language was included and AII agreed to it.  Now, AII, just like the party seeking to disqualify the lawyers in *Zador*, is using this motion for strategic purposes – which is only underscored by the fact that AII, just like the party seeking to disqualify in *Zador*, expressly agreed not to do what it is doing here: disqualify their former lawyers despite an express agreement not to do so and even though the cases are unrelated.

Here, Mr. Conti did what any reasonable lawyer would have done under the circumstances – which is disclose in detail to AII "adequate information about the

material risks [his] representation" posed to AII then and going forward. *Compare* Conti Decl. at ¶ 4; Ex. 2) *with Visa*, *supra*, 241 F.Supp 2d at 1106 (noting that whether a fully informed decision to waive disqualification is "obviously fact-specific" and outlining several factors[6] to decide that issue"). Nothing more was required of Mr. Conti under the circumstances.

Moreover, in some scenarios (unlike here) "a second waiver [would] be warranted, but only if the attorney believes that the first waiver was insufficiently informed." *Id.* But "[t]here is no case law requiring a second disclosure in all circumstances for an advance waiver to be valid." *Id.* AII's suggestion, then, that Mr. Conti was required to get AII's consent – once again - to represent Chartwell in this unrelated case is meritless. (*See* Doc. No. 43 at 9-10)(claiming that Conti Law failed to obtain AII's informed written consent a second time to represent Chartwell in this case).

As *Zador* pointed out, "as courts are increasingly aware, motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent. Such motions can be misused to harass opposing counsel, to delay the litigation, or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable. In short, it is widely understood by judges that 'attorneys now commonly use disqualification motions for purely strategic purposes." *Zador,* 31 Cal.App. 4th at 1303.  Moreover, "it must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement. A client deprived of the attorney of his [or her] choice suffers a

---

[6] One of these factors includes "the nature of the actual conflict" that eventually arose for Mr. Conti and asks whether [he] sought to represent both [AII and Chartwell] in the same dispute" (which he did not). *Id.*  This fact cuts sharply against the idea, here, that AII did not make an informed choice about waiving its right to disqualify Mr. Conti in this case. *Id.*

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

particularly heavy penalty where, as appears to be the case here, his attorney is highly skilled in the relevant area of the law." *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300.

That is precisely the case here. The Court should see this motion exactly for what it is and deny it.

## C.    The motion to disqualify should be denied because the cases at issue are not the "same" or "substantially related".

To disqualify Mr. Conti and Conti Law here, AII must show that this dispute is "the same or substantially related" to the PAGA claims in the *Ramirez* Action. *Housing*, 2019 WL 3002852 at *3 – *4 (citing Cal. R. Prof. Conduct 1.9[7] and refusing to disqualify Jones Day because that case was not the "same or substantially related" in any way to Jones Day's previous representation).

AII's disqualification motion rests on the claim that the *Ramirez* Action is "substantially related" to the indemnity and contribution claims AII asserts in its counterclaim against Chartwell. (*See* Doc. No. 43 at 11 [invoking the counterclaims AII asserted against Chartwell for "indemnity and contribution" as the basis for claiming the cases at issue are "substantially related]). But that argument and, by extension, AII's motion collapses in light of the fact that the court recently dismissed all of AII's claims.  [*See* Doc. 44.]

Even if AII's claims had not been dismissed, AII fails to explain how those indemnity and contribution claims against Chartwell are the "same" or "substantially related" to the *Ramirez* Action either. AII's theory of indemnity hinges on whether the 2017 Service Agreement requires Chartwell to indemnify AII and, if it does, whether an obligation to indemnity AII was triggered by Chartwell's

---

[7] AII acknowledges that Cal. R. Prof. Conduct, Rule 1.9 permits Mr. Conti to represent Chartwell here if he obtained AII's informed written consent to do so (*see* Doc. No. 43 at 10) (and he did, for the reasons explained just above). That consent, in turn, gives no force to AII's argument here that Rule 1.9 otherwise prevents Mr. Conti from serving as Chartwell's lawyer in this case (it does not).

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

conduct when it assigned Ramirez to work for AII. During the entire course of that representation, AII never gave Mr. Conti any "confidential information" about (i) the negotiation, formation or execution of the 2017 Service Agreement  (which is not at issue anymore) or (ii) the conduct by Chartwell that AII claims triggered an obligation to indemnify. *Compare* (Conti Decl. at ¶¶ 5-9.); with *Akazawa v. Link New Technology International,* No. SACV031474JVS(MLG), 2004 WL 7338362, at *1, n.2 (C.D. Cal., Nov. 9, 2004)(Selna, J.) ("In a successive representation case, an attorney represents a party and then subsequently represents another party with interests adverse to the first party. The concern in these cases is that the attorney will use confidential information obtained in the first representation against his former client in the subsequent litigation.") Even if the Court had not dismissed AII's counterclaims, AII's disqualification motion was still doomed.

However, in light of the Court granting Chartwell's motion to dismiss, AII's burden is to show that the claims in the *Ramirez* Action are the "same" or "substantially related" to Chartwell's claims against AII. AII fails to do so. The *Ramirez* Action is a PAGA action where plaintiff seeks to recover penalties from Chartwell and AII for alleged Labor Code violations. In contrast, this case is a collection action which "deals" with an altogether different "legal issue": whether AII breached the 2020 Staffing Services Agreement by failing to pay all invoices for temporary staffing services provided and owes Chartwell $1.4 million. *Housing*, 2019 WL 3002852 at *4 (noting that "only representations which are directly adverse to the former client are proscribed" and finding no conflict existed for Jones Day there merely because its successive representation of a client in another case was "indirectly adverse" to the party seeking to disqualify).

Contrary to AII's claim, the two cases patently involve different and unrelated legal issues, which explains why AII's motion makes no serious attempt to show that the PAGA claims in the *Ramirez* Action and Chartwell's collection action are the "same" or "substantially related". *See DCR Marketing Inc v. US Alliance Group,*

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

*Inc.*, No. SACV1901897JVS(DFM), 2020 WL 2066148, at *6 (C.D. Cal., Jan. 31, 2020) (Selna, J.) (citing *Lehman Brothers Holdings Inc. v. Direct Mortgage Corp.* (C.D. Cal., Feb. 4, 2013, No. 209CV04170CJCRNBX) 2013 WL 12114447, at *5 for the proposition that disqualification failed under the "same or substantially related" test because the disqualifying party could not point to any "specific legal issue that was present in the [prior] cases that is also critical to this case").

Indeed, these two cases could not involve decidedly more unrelated "legal issues": the *Ramirez* Action looks to whether AII and Chartwell are subject to penalties under PAGA for Labor Code violations; this case involves whether AII is liable to Chartwell under the 2020 Service Agreement for $1.4 million in unpaid invoices. While both cases involve AII and Chartwell, that is a superficial connection has no meaning in this context. What matters here is whether these "matters involve the same transaction or legal dispute" which they do not.

> **D.     The motion to disqualify should be denied because Mr. Conti and Conti Law never obtained confidential information from AII in connection with this case.**

First, during his representation of AII in the *Ramirez* Action Mr. Conti never obtained any confidential information from AII that even remotely bears on the issues in this case.  (Conti Decl. at ¶¶ 10-11.)  Indeed, its hard to imagine how he could, given that he was unaware of the 2020 Services Agreement and when he did become aware of it he withdrew as AII's counsel due a potential conflict. (Conti Decl. ¶ 11, ex. 8.)

To reiterate this Court's point: "In a successive representation case" the "concern" is "that the attorney will use confidential information obtained in the first representation against his former client in the subsequent litigation." *Akazawa v. Link New Technology International*, No. SACV031474JVS(MLG), 2004 WL 7338362, at *1, n.2 (C.D. Cal., Nov. 9, 2004)(Selna, J.)   at *1, n.2 (Selna, J.) (emphasis added).  But this concern can only arise in circumstances where the

former client first "demonstrates" a "substantial relationship" between the "subjects of the antecedent and current representation". *Id.* (citing *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994)).  AII cannot make that connection here.

Because there is no "substantial relationship" between the *Ramirez* Action and Chartwell's collection action, the "presumption" that Mr. Conti did come into "confidential information" when he represented AII in the *Ramirez* Action never arises in the first place. (*See* Doc. 43 at pg. 11 -12.) Moreover, whatever information that was material to Mr. Conti's "evaluation and strategy" in the *Ramirez* Action (that is, whether AII or Chartwell is liable for penalties under PAGA because it violated the labor code) has nothing to do with his "evaluation and strategy" of whether AII is liable to Chartwell for $1.4 million because it breached the 2020 Service Agreement. *DCR Marketing*, 2020 WL 2066148, at *5 (Selna, J.) ; *see also U.S. v. Ketner*, No. SACR 05-00036-JVS, 2006 WL 8443071, at *3 (C.D. Cal., Jan. 25, 2006)(Selna, J.)(endorsing the "pragmatic approach" in this context which focuses on the likelihood that the attorney gained "confidences" in the first case and refusing to disqualify counsel because there was "no realistic chance that confidences" were disclosed [to him] in the prior representation").  (*Cf.* Conti Decl. at ¶¶ 5-9)(reflecting the same here).

The fact Mr. Conti did not receive confidential information related to this case is also borne out by the Declarations of Brian Dror and Rafi Ryzman submitted by AII in support of the motion to disqualify. Mr. Dror asserts that he "shared confidential information with Mr. Conti regarding AII's business practices and operations, which I intended for Mr. Conti to use for the purpose of defending AII in the Ramirez Action".  [*See* Doc. 43-3 at ¶ 8.]  Mr. Ryzman asserts that he "regularly communicated with Mr. Conti and provided him with information and documents on behalf of AII which were intended for him to use only in connection with his defense of AII in the Ramirez Action" and that he "provided Conti Law with any requests by Alex Conti relating to AII's staffing and employment practices, as well

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

1   as documents and information relating to AII's and Chartwell's business

2   relationship and the 2017 Service Agreement." [*See* Doc. 43-5 at ¶ 20.]

3       Chartwell's complaint alleges that AII breached the 2020 Service Agreement

4   by refusing to pay all invoices for temporary staffing services Chartwell provided to

5   AII.  Neither the Dror Declaration nor the Ryzman Declaration state that Mr. Conti

6   acquired confidential information from AII relating to the *2020 Service Agreement*

7   that forms the basis of this action, or that Mr. Conti obtained confidential

8   information related to AII's decision not to pay Chartwell for the staffing services it

9   provided pursuant to the *2020 Service Agreement*.

10      Mr. Dror claims that he gave Mr. Conti confidential information "for the

11  purpose of defending AII in the *Ramirez* Action".  The *Ramirez* Action, however, is

12  unrelated to the 2020 Service Agreement.  Mr. Ryzman declares that the information

13  he purportedly provided to Mr. Conti was for use in "the defense of the *Ramirez*

14  Action" and the information related to "the 2017 Service Agreement".  Again, the

15  *Ramirez* Action and the 2017 Service Agreement are unrelated to Chartwell's

16  collection action.  AII's own declarations demonstrate that this case and the *Ramirez*

17  Action are unrelated.

18      **E.    AII's claim that Mr. Conti is disqualified under the advocate-**

19              **witness rule has no merit.**

20      AII claims the advocate-witness rule prohibits Mr. Conti from serving as

21  Chartwell's lawyer here because he is a "crucial fact witness" to the "facts giving

22  rise to this Action." (Doc. No 43 at 14.)  This claim has no merit.

23      AII's analysis on this front, however, is moot because it was based on the

24  claim that Mr. Conti's testimony was "central" to AII's dismissed indemnity

25  counterclaims against Chartwell. (Doc. No. 43 at 15); *see also id.* (claiming that Mr.

26  Conti is a "key-witness" here because he "possesses substantial personal

27  knowledge" about AII's indemnity claim); *Id.* at 16 (claiming that Mr. Conti is a

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

1  crucial fact witness in this case because "his testimony is needed" and "central to"

2  AII's dismissed counterclaims against Chartwell).

3       AII's argument that allowing Mr. Conti to testify at trial would be

4  "prejudicial" and "detriment[al]", fails because AII's analysis was premised on the

5  claim that Mr. Conti possessed "substantial personal knowledge" about AII's

6  dismissed indemnity claims. Doc. No 43 at 15-17 (claiming that Mr. Conti

7  possessed "significan[t]" personal knowledge about whether Chartwell has a duty to

8  "fully defend and indemnify" AII).  Because AII's counterclaim has been dismissed,

9  and because Mr. Conti does not possess any  personal  knowledge about that issue,

10  the "advocate witness" rule does not come into play.

11       That leaves AII to explain how Mr. Conti "possesses any substantial personal

12  knowledge" about the breach of the 2020 Services Agreement and AII's reasons for

13  refusing to pay the $1.4 million in invoices for staffing services.  (*Cf.* Conti Decl. at

14  ¶ 11.)  AII's motion makes no serious argument that Mr. Conti has any testimony to

15  offer that is "significant" to the "central issues of fact" to Chartwell's claim for

16  unpaid invoices and AII's defenses. Even if Mr. Conti somehow possessed

17  percipient knowledge, the advocate-witness rule still has no force because Chartwell

18  consents to Mr. Conti serving as both advocate and witness in this case. (*See*

19  Declaration of Holmes Lilley, III at ¶ 2.). These circumstances, combined with

20  Chartwell's "strong interest" in using its counsel of choice and the strong inference

21  that AII is using this "motion to disqualify for purely tactical purposes", undermine

22  the application of the advocate-witness rule here. *Gutierrez*, 2013 WL 12130319, at

23  *3 (Selna, J.) (declining to disqualify the attorney there under the California

24  advocate-witness rule because, as here, client consented to attorney serving "dual

25  role" as both advocate and witness and because this Court found attorney there

26  would not otherwise serve as "key witness" in that case).

27       Finally, this dispute will be heard as a bench trial. AII fails to explain how

28  Mr. Conti's testimony would unfairly sway the fact finder at that proceeding. (*See*

22

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

Doc. No. 43 at 16-17) (focusing primarily on how Mr. Conti's testimony would impact a jury; *cf. Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 402 F.Supp.3d 615, 717 (N.D. Cal. 2019) ("The policies underlying [the advocate-witness] rule are related to the concern that jurors  will be unduly influenced by the prestige and prominence of the prosecutor's office and will base their credibility determinations on improper factors.")(emphasis added)(citing *United States v. Edwards*, 154 F.3d 915, 921 (9th Cir. 1998); *see also U.S. v. Sayakhom*, 186 F.3d 928, 943 (9th Cir. 1999), *amended*, 197 F.3d 959 (9th Cir. 1999).)

## V.    CONCLUSION

Chartwell respectfully requests that AII's motion to disqualify Alexander L. Conti and the Conti Law firm be denied.

Dated:  July 26, 2021                     **CONTI LAW**

By:  */s/ Alexander L. Conti*
Alexander L. Conti
Attorneys for Plaintiff
CHARTWELL STAFFING SERVICES INC.

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 23 Corporate Plaza, Suite 150, Newport Beach, CA 92660. On July 26, 2021, I served the foregoing document described as: **PLAINTIFF/COUNTER-DEFENDANT CHARTWELL STAFFING SERVICES INC.'S OPPOSITION TO DEFENDANT/CROSS-COMPLAINANT AMERICAN INTERNATIONAL INDUSTRIES MOTION TO DISQUALIFY ALEXANDER CONTI, ESQ. AND CONTI LAW FIRM AS COUNSEL FOR PLAINTIFF/CROSS-DEFENDANT CHARTWELL STAFFING SERVICES INC. o**n Counsel for American International Industries

FARHAD NOVIAN farhad@novianlaw.com
ALEXANDER KANDEL alexanderk@novianlaw.com
NICHOLAS BALTAXE nicholasb@novianlaw.com
NOVIAN & NOVIAN, LLP
1801 Century Park East, Suite 1201
Los Angeles, CA 90067
Telephone: (310) 553-1222
Facsimile: (310) 553-0222

[    ]    (BY MAIL) I am familiar with the practice of Conti Law for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Conti Law, Newport Beach, California, following ordinary business practices.

[    ]    (BY OVERNIGHT MAIL) I am familiar with the practice of Conti Law for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by FedEx/Overnite Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by FedEx/Overnite Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by FedEx/Overnite Express at Conti Law, Corona Del Mar, California, following ordinary business practices.

[    ]    (BY FACSIMILE TRANSMISSION) On this date, at the time indicated on the transmittal sheet, attached hereto, I transmitted from a facsimile transmission machine, which telephone number is (949) 791-8556, the document described above and an unsigned copy of this declaration to the person, and at the facsimile transmission telephone numbers, set forth herein.  The above-described transmission was reported as complete and without error by a properly issued transmission report issued by the facsimile transmission machine upon which the said transmission was made immediately following the transmission.

[ X  ] (BY ELECTRONIC MAIL) On this date from my email address of aconti@conti-law.com I caused a copy of said document to be transmitted via electronic mail to the e-mail addresses listed above.

[    ]    (BY MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the person at the addresses listed above and/or providing them to a professional messenger service for service.  [Declaration of Messenger attached separately.]

24
PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on 7/26/21, at Newport Beach, California.

_____/s/ Alexander L. Conti
Alexander L. Conti

PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY MR. CONTI AND CONTI LAW